IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Kenneth Haggard, et al.,

     Plaintiffs,

    v.                      Case No. 2:09-cv-44

Thomas J. Ossege, et al.,       JUDGE JAMES L. GRAHAM
                                   Magistrate Judge Kemp

     Defendants.

<u>ORDER</u>

This case is before the Court on the motion for leave to file instanter a first amended complaint filed by plaintiffs Kenneth Haggard, Maryann Tomczyk and MVB Mortgage Corporation. The motion has been fully briefed.  For the following reasons, the motion will be granted.

I.  <u>Background</u>

The factual background of this case has been set forth in previous orders of this Court and will not be repeated in great detail here.  For purposes of the present motion, however, the original complaint alleges the following.  Defendants Thomas J. Ossege, Jean E. Huffer, Emma Erb, and Tina Burrey, former officers and directors of Miami Valley Bank ("the Bank"), failed to segregate the available collateral on the Bank's books with respect to loans originated by Investaid Corporation and participated in by the Bank and MVB Mortgage.  MVB's participation included loaning money to the Bank for the Investaid loans from March, 2006 through March, 2007.  MVB, in turn, had borrowed the money to lend to the Bank on its line of credit with National City Bank.

In March, 2007, Mr. Haggard became aware that Investaid would need to file for bankruptcy.  He informed National City and National City demanded that MVB make sure that the line of credit

was not secured by any Investaid loans.  As a result, MVB asked
the Bank to pay back the Investaid loans.  The Bank was not able
to repay the full loan amount in cash.  However, on March 20,
2007, the Bank's board of directors approved the repayment of the
full amount, in an effort to prevent National City from demanding
repayment of MVB's entire line of credit balance.  On March 27,
2007, MVB transferred some cash to National City and assigned
other mortgage loans as collateral to replace the Investaid
loans.

The Bank's board of directors approved the March 27, 2007
transaction on the condition of the Bank's transfer of its first
quarter earnings to its loan loss reserve.  In reviewing the
March 27 transaction, the Federal Deposit Insurance Corporation
("FDIC") concluded that the transaction constituted a sale of
assets between the Bank and its affiliate.  Based on this
conclusion, the FDIC alleges that the MVB plaintiffs and the Bank
committed an unlawful "covered" transaction under Sections 23A
and 23B of the Federal Reserve Act 12 U.S.C. §§371c & 371c-1.

As this Court has previously noted, the Bank became
insolvent and was closed on October 4, 2007.  The FDIC became the
receiver of the Bank.

## II.  Legal Standard

Fed.R.Civ.P. 15(a)(2) states that when a party is required
to seek leave of court in order to file an amended pleading,
"[t]he court should freely give leave when justice so requires."
The United States Court of Appeals for the Sixth Circuit has
spoken extensively on this standard, relying upon the decisions
of the United States Supreme Court in Foman v. Davis, 371 U.S.
178 (1962) and Zenith Radio Corp. v. Hazeltine Research, Inc.,
401 U.S. 321 (1971), decisions which give substantial meaning to
the "when justice so requires."  In Foman, the Court indicated
that the rule is to be interpreted liberally, and that in the

-2-

absence of undue delay, bad faith, or dilatory motive on the part
of the party proposing an amendment, leave should be granted.  In
Zenith Radio Corp., the Court indicated that mere delay, of
itself, is not a reason to deny leave to amend, but delay coupled
with demonstrable prejudice either to the interests of the
opposing party or of the Court can justify such denial.

Expanding upon these decisions, the Court of Appeals has
noted that:

> [i]n determining what constitutes prejudice, the
> court considers whether the assertion of the new
> claim or defense would: require the opponent to
> expend significant additional resources to conduct
> discovery and prepare for trial; significantly
> delay the resolution of the dispute; or prevent
> the plaintiff from bringing a timely action in
> another jurisdiction.

Phelps v. McClellan, 30 F.3d 658, 662-63 (6th Cir. 1994) (citing
Tokio Marine & Fire Insurance Co. v. Employers Insurance of
Wausau, 786 F.2d 101, 103 (2d Cir. 1986)).  See also Moore v.
City of Paducah, 790 F.2d 557 (6th Cir. 1986); Tefft v. Seward,
689 F.2d 637 (6th Cir. 1982).  Stated differently, deciding if
any prejudice to the opposing party is "undue" requires the Court
to focus on, among other things, whether an amendment at any
stage of the litigation would make the case unduly complex and
confusing, see Duchon v. Cajon Co., 791 F.2d 43 (6th Cir. 1986)
(per curiam), and to ask if the defending party would have
conducted the defense in a substantially different manner had the
amendment been tendered previously.  General Electric Co. v.
Sargent and Lundy, 916 F.2d 1119, 1130 (6th Cir. 1990); see also
Davis v. Therm-O-Disc, Inc., 791 F. Supp. 693 (N.D. Ohio 1992).

The Court of Appeals has also identified a number of
additional factors which the District Court must take into
account in determining whether to grant a motion for leave to
file an amended pleading.  They include whether there has been a

repeated failure to cure deficiencies in the pleading, and
whether the amendment itself would be an exercise in futility.
<u>Robinson v. Michigan Consolidated Gas Co.</u>, 918 F.2d 579 (6th
Cir.1990); <u>Head v. Jellico Housing Authority</u>, 870 F.2d 1117 (6th
Cir.1989).  The Court may also consider whether the matters
contained in the amended complaint could have been advanced
previously so that the disposition of the case would not have
been disrupted by a later, untimely amendment.  <u>Id</u>.  It is with
these standards in mind that the instant motion to amend will be
decided.

III.  <u>The Motion for Leave to Amend</u>

Through their motion, the MVB plaintiffs seek leave for Mr.
Haggard, the sole shareholder of the Bank as well as a former
director, to assert an alternative claim for breach of fiduciary
duty against two of the defendants - Thomas Ossege and Jean
Huffer.  As noted above, these defendants are former directors
and senior officers of the Bank.  The MVB plaintiffs contend that
they obtained the information supporting such a claim through
discovery.

As the MVB plaintiffs explain, these specific defendants'
positions as officers and directors required that they identify
and advise Mr. Haggard, as a shareholder, that the March 2007
transaction at issue here violated Section 23A of 12 U.S.C. §371c
to the extent that they believed the transaction constituted a
"sale."  They have submitted excerpts of deposition testimony in
which they contend these defendants' assert the belief that the
transaction was a sale and that the issue of a violation of
Section 23A was not disclosed to Mr. Haggard.  Further, they rely
on <u>Davis v. DCB Financial Corp.</u>, 259 F.Supp.2d 664 (S.D. Ohio
2003) to support their position that, because Mr. Haggard has
been harmed individually, he has a direct cause of action against
these defendants.  According to the MVB plaintiffs, <u>Davis</u>

-4-

recognizes that under Ohio law corporate officers and directors owe fiduciary duties to a corporation's shareholders in addition to the corporation itself and a shareholder may bring a direct action for breach of that duty if he has suffered an injury separate and distinct from the corporation.

In response, the Ossege defendants assert that the motion should be denied as untimely because Mr. Haggard has been aware of the information for some time - not only recently as a result of discovery. Further, they contend that the MVB plaintiffs' "novel" theory of liability simply is not viable. According to the Ossege defendants, <u>Davis</u> does not hold that, under Ohio law, "a director or officer owes a fiduciary duty to provide legal advice to a fellow director and controlling shareholder at a board meeting." <u>See</u> Memorandum in Opposition, at p.4 (Doc. #81). Further, they claim that, because they were not licensed in Ohio to provide legal advice, their failure to do so or any alleged legal malpractice cannot form the basis of the MVB plaintiffs' claims. Additionally, they contend that the proposed amended complaint's factual allegations do not support a finding that they are liable to Mr. Haggard as a shareholder because they relate solely to actions taken by him in his role as a director.

Finally, the Ossege defendants contend that, to the extent any cause of action exists against them as officers and directors, the claim belongs to the FDIC. As they explain, because the Bank has been closed and the FDIC has been appointed receiver, 12 U.S.C. §1821(k) governs. They cite to two cases from other circuits which they contend support the position that, under this statute, claims for wrongdoing against officers and directors of failed banks are owned by the FDIC, <u>Pareto v. FDIC</u>, 139 F.3d 696 (9th Cir. 1998) and <u>Bauer v. Sweeney</u>, 964 F.2d 305 (4th Cir. 1992). They also contend, apparently in reliance on <u>Village of Oakwood v. State Bank and Trust Co.</u>, 539 F.3d 373 (6th

-5-

Cir. 2008), that, to the extent Mr. Haggard's claims are not derivative in nature, the Bank would be liable for any damages caused by its officers and directors and the Federal Deposit Insurance Act provides the exclusive remedy.

In reply, the MVB plaintiffs contend that their motion is timely because they learned of the Ossege defendants' belief that the March 2007 transaction constituted a sale through the depositions. Further, they note that the Ossege defendants will not be prejudiced by an amendment because the case is at an early stage with the issue of this Court's subject matter jurisdiction currently pending. Additionally, by way of footnotes, they dismiss as "red herrings" the Ossege defendants' arguments that Mr. Haggard is suing in his capacity as a director or that he is attempting to assert a claim for legal malpractice.

Further, the MVB plaintiffs argue that <u>Davis</u> correctly states Ohio law. Again, relying on <u>Davis</u>, they contend that the Ossege defendants owed a fiduciary duty to the Bank and Mr. Haggard as its sole shareholder. Because, as they allege, Mr. Haggard has been harmed individually by various regulatory and enforcement actions instituted against him individually by the FDIC, they assert that he has standing to assert a direct claim against these defendants.

Finally, the MVB plaintiffs assert that Ohio law is applicable despite the FDIC receivership. They contend that the cases relied upon by the Ossege defendants do not support the assertion that the FDIC as receiver has the sole authority to pursue a direct shareholder claim. Specifically, they claim that, to the extent the Ossege defendants rely on <u>Village of Oakwood</u>, that case has no applicability here because Mr. Haggard's proposed claim is directed to defendants Ossege and Huffer and relates specifically to their conduct - not that of the FDIC as receiver.

-6-

IV. <u>Analysis</u>

Briefly, the Court notes that the Ossege defendants have not presented anything beyond brief argument to suggest that the information forming the basis of the proposed amendment was available to Mr. Haggard prior to the depositions. Further, although the depositions on which the MVB plaintiffs rely were taken in April and June of 2010, these defendants have not argued that the MVB plaintiffs are seeking to delay this action or are acting in bad faith. Additionally, they have not asserted any prejudice they will suffer if the proposed amendment is allowed. Consequently, the Court views the focus of their opposition to be the futility of the proposed amendment. It is to this issue that the Court will now turn.

There is some conceptual difficulty presented when the primary basis for a party's opposition to the filing of an amended pleading is that the pleading is futile, *i.e.* that it fails to state a claim upon which relief can be granted. A Magistrate Judge cannot ordinarily rule on a motion to dismiss, <u>see</u> 28 U.S.C. §636(b)(1)(A), and denying a motion for leave to amend on grounds that the proposed new claim is legally insufficient is, at least indirectly, a ruling on the merits of that claim.

At least where the claim is arguably sufficient, it is usually a sound exercise of discretion to permit the claim to be pleaded and to allow the merits of the claim to be tested before the District Judge by way of a motion to dismiss. Even a District Judge may choose to adopt this approach: "The trial court has the discretion to grant a party leave to amend a complaint, even where the amended pleading might ultimately be dismissed." <u>Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Md.</u>, 715 F.Supp. 578, 581 (S.D.N.Y. 1989). Consequently, rather than determining the actual legal sufficiency of the new claim,

-7-

in many cases it will suffice to determine if there is a substantial argument to be made on that question and, if so, to allow the amended pleading to be filed with the understanding that a motion to dismiss for failure to state a claim may follow.

The MVB plaintiff's proposed amendment relies heavily on this Court's decision in Davis. In that case, this Court noted that, under Ohio law,

> Corporations and their officers and directors occupy a fiduciary relationship with corporate shareholders. See Thomas v. Matthews, 94 Ohio St. 32, 113 N.E. 669 (1916); Thompson v. Central Ohio Cellular, Inc., 93 Ohio App.3d 530, 540, 639 N.E.2d 462 (1994). However, actions for breach of fiduciary duties are generally brought in derivative suits. Owens, 86 Ohio App.3d at 220, 620 N.E.2d 234. This is because the right to maintain an action to recover for the alleged negligence, fraud, or misconduct of directors and officers, resulting in the depletion of the corporation property, belongs to the corporation itself. Id. A complaining shareholder has a direct action only if he is injured in a way that is separate and distinct from an injury to the corporation. Weston, 74 Ohio St.3d at 379, 658 N.E.2d 1058.

Id. at 673.

Here, Mr. Haggard has alleged that the Ossege defendants breached the fiduciary owed to him as a shareholder when they failed to "identify [a] Section 23A problem" or failed to advise him of the potential problem prior to the board approval of the March 2007 transaction. Mr. Haggard claims that, as a result, he suffered damages individually due to the FDIC's pursuit of "repeated and intrusive regulatory and enforcement actions against him ... in his individual capacity." See Proposed Amended Complaint, at ¶75 (Doc. #80-1). He asserts that these damages are "distinct from the value of his ownership interest in Miami Valley Bank." Id.

In addition to relying on Davis, the MVB plaintiffs have

discussed and distinguished the cases relied on by the Ossege defendants in asserting that, to the extent any claim exists, it belongs to the FDIC as receiver.  For example, the MVB plaintiffs contend that the language quoted by the Ossege defendants from Gaff v. Federal Deposit Ins. Corp., 828 F.2d 1145, 1148 (6th Cir. 1987), actually supports their position that Mr. Haggard has standing to bring a direct claim.  Further, they contend that Pareto and Bauer are inapplicable because Mr. Haggard's proposed claim is not a derivative claim arising from an injury to the corporation.  Finally, they argue that Village of Oakwood involved claims relating to the conduct of the FDIC as the receiver and Mr. Haggard's proposed claim relates to the conduct of officers and directors.

In light of the above, the MVB plaintiffs have made a substantial argument with respect to their proposed claim. Further, as noted above, the Ossege defendants have not demonstrated any undue prejudice they will suffer if the motion is granted.  Nor is there any indication in the record that the current motion is designed to delay these proceedings or that the MVB plaintiffs are acting in bad faith.  Further, as the MVB plaintiffs have noted, threshold issues are currently pending. Under these circumstances, the Court believes that it is a better exercise of discretion to permit the proposed amended complaint to be filed.  Certainly, the Ossege defendants are free to challenge the amended complaint by way of a motion to dismiss should they so choose.  Consequently, the motion to amend will be granted.

## V.  Conclusion

For the reasons stated above, the motion for leave to file instanter a first amended complaint (#80) is granted.  The Clerk shall detach and file the first amended complaint attached to the motion as Exhibit A.

VI.  <u>Procedure for Reconsideration</u>

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.

<u>/s/ Terence P. Kemp</u>
United States Magistrate Judge